**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NEW YORK SHAKESPEARE FESTIVAL,

Plaintiff,

v.

IS COMPANY LLC d/b/a IAN SCHRAGER
COMPANY and IAN SCHRAGER,

Defendants.

---

**CIVIL ACTION NO. 19-CV-_____**

**COMPLAINT**

Plaintiff New York Shakespeare Festival aka The Public Theater, ("The Public" or "Plaintiff"), by and through its undersigned attorneys Davis Wright Tremaine LLP, as and for its complaint against IS Company LLC d/b/a Ian Schrager Company ("ISC") and Ian Schrager ("Mr. Schrager") (ISC and Mr. Schrager are collectively referred to as the "Schrager Defendants" or "Defendants"), respectfully alleges as follows, on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

## NATURE OF ACTION

1.      This is an action for (i) trademark infringement under Section 32 of the Trademark Act of 1946 (15 U.S.C. § 1051, *et. seq.*, as amended (the "Lanham Act")) 15 U.S.C. § 1114; (ii) unfair competition, false designation of origin under Section 45 of the Lanham Act, 15 U.S.C. § 1125(a); (iii) violation of New York General Business Law §§ 349 and 360; and substantial and related claims of unfair competition under the common law.

2.      This action arises out of Ian Schrager's use of the marks, **PUBLIC**, PUBLIC and PUBLIC ARTS−in connection with theater, musical entertainment, restaurant and bar services−that infringes The Public's family of famous trademarks, including **PUBLIC.**,

THE PUBLIC, AT THE PUBLIC, PUBLIC FORUM, PUBLIC WORKS, PUBLIC STUDIO,

JOE'S PUB AT THE PUBLIC. Despite being notified by The Public that Schrager Defendants'

use of the PUBLIC trademarks in connection with theatrical performances, musical

entertainment, restaurant and bar services (the "Infringing Uses") is likely to cause confusion,

Schrager Defendants refused to cease such use and have continued the Infringing Uses in

competition with The Public, recently culminating in a live staged musical production of the

Broadway classic, *Carmen Jones*, widely marketed under Defendants' infringing marks.

## THE PARTIES

3.      Plaintiff The Public is a not-for-profit organized and existing under the laws of

New York, with a principal place of business in New York, New York.

4.      ISC is a limited liability company organized and existing under the laws of the

State of Delaware, with its principal place of business in New York, New York.

5.      Mr. Schrager is a natural person and the founder and current owner of ISC and

resides and does business in New York, New York. Mr. Schrager is a moving, active, conscious

force behind IAC including its PUBLIC brand.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

1338(a), 1338(b), and 15 U.S.C. § 1121 because it arises under the Lanham Act, 15 U.S.C. §§

1051 et seq. Jurisdiction over the New York State law claims is also appropriate as these claims

are so related to the claims brought under the Lanham Act that they form part of the same case or

controversy and, hence, fall within the scope of this Court's supplemental jurisdiction pursuant

to 28 U.S.C. §§ 1338(b) and 1367.

7.      This Court has personal jurisdiction over Defendants because they are doing business in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to The Public's claims occurred in this District and because Defendants are subject to personal jurisdiction in this District.

9.      The Court has personal jurisdiction over Defendants because they engage in continuous and systematic business activities in the State of New York by, among other things, offering services in the state. Moreover, Defendants have purposely directed substantial activities at the residents of the State of New York and derive substantial revenue from interstate commerce.

## THE PUBLIC AND ITS FAMOUS PUBLIC MARKS

10.     Conceived over 60 years ago as one of the nation's first nonprofit theaters, The Public has a history of accomplishment in the live stage arena virtually without equal.

11.     The Public's wide breadth of programming includes an annual season of new work in five theaters located within its landmark home on Lafayette Street in the East Village, Free Shakespeare in the Park each summer at the Delacorte Theater in Central Park, The Mobile Unit touring throughout New York City's five boroughs, Public Forum, Under the Radar, Public Studio, Public Works, Public Shakespeare Initiative, and several other programs.

12.     Since premiering *Hair* in 1967, The Public has launched over 900 productions, including *A Chorus Line* in 1975 and more recently the Tony Award-winning musical *Hamilton* by Lin-Manuel Miranda. Countless theater artists of the first magnitude have appeared on the stages of The Public, including Meryl Streep, Kevin Kline, Sam Waterston, Al Pacino, Anne Hathaway, Harvey Fierstein and Lupita Nyong'o (who starred in The Public's

award-winning production of *Eclipsed* in 2015 and won the Tony Award for Best Actress in a Play when the production transferred to Broadway in 2016). At one point in 2016, three productions which had transferred from The Public (*Fun Home*, *Hamilton* and *Eclipsed*) were running simultaneously on Broadway—a feat that had not been accomplished for over 25 years by any institutional theater (at that earlier time, it was also accomplished by The Public).

13.     The Public's programs and productions can also be seen regionally across the country and around the world. The Public has received 59 Tony Awards, 170 Obie Awards, 53 Drama Desk Awards, 54 Lortel Awards, 32 Outer Critic Circle Awards, 13 New York Drama Desk Awards, and 6 Pulitzer Prizes.

14.     In the past 50 years, Joe's Pub (the "Pub") has been the sixth performance space within The Public and is a music venue and restaurant that hosts live performances across genres and arts, ranging from cabaret to modern dance to world music. The Pub is known as one of New York City's live showcase venues and is notable for being where Amy Winehouse and Adele made their U.S. headlining concert debuts. Other notable performers at the Pub include Bono, David Byrne, Leonard Cohen, Patti Smith, Janelle Monae, Alice Coltrane, Elvis Costello, Dion, Emmylou Harris, Norah Jones, Alicia Keys, Eartha Kitt, Huey Lewis, Taylor Mac, John Mayer, Dolly Parton, Neil Sedaka, They Might Be Giants, Cyndi Lauper, Nancy Sinatra, Russell Crowe, Pete Townshend and Nick Adams. In 2013, in its 15th anniversary year, the Pub was declared one of *Rolling Stone Magazine*'s 10 Best Clubs in America.

15.     While its activities in the East Village and in Central Park would be sufficient to secure the fame of The Public, the company has continued to expand the boundaries of its mission with other PUBLIC-branded activities. THE PUBLIC WORKS program is an ongoing initiative that cultivates new models of participation between actors and audiences and has

4

expanded beyond New York City to licensed programs in Dallas, Seattle and Detroit, with more

locations to come. Likewise, The Public's Mobile Unit has re-emerged in recent years as a

significant force bringing live theater to the culturally underserved neighborhoods of New York

outside Manhattan. PUBLIC FORUM, begun in 2010, presents lectures and debates that

showcase leading voices in the arts, from Stephen Sondheim to Ariana Huffington, which are

frequently presented to worldwide audiences via online media.

16.     The Public has registered and uses a family of PUBLIC trademarks in connection

with, *inter alia*, theater, musical entertainment, restaurant and bar services ("The Public's Field

of Use"), including THE PUBLIC, AT THE PUBLIC, PUBLIC FORUM, PUBLIC WORKS,

PUBLIC STUDIO, JOE'S PUB AT THE PUBLIC and the design marks pictured below to

identify the source of its services (the "PUBLIC Marks"):



17.     The Public owns the following registrations:

a.  Registration no. 5319859 dated October 31, 2017, for THE PUBLIC for "entertainment and educational services, namely, live theatrical and cabaret performances; seminars, workshops and classes concerning theater arts and theater production" in Class 41;

b.  Registration no. 5319861 dated October 31, 2017, for **PUBLIC.** for "entertainment and educational services, namely, live theatrical and cabaret performances; seminars, workshops and classes concerning theater arts and theater production" in Class 41; and

c.  Registration no. 5034444 dated September 6, 2016, for JOE'S PUB for "entertainment services, namely, the presentation of live theatrical and cabaret performances" in Class 41 and "bar and restaurant services" in Class 43.

## DEFENDANTS' BUSINESS AND WRONGFUL CONDUCT

18.     In 2005, Mr. Schrager founded the predecessor to ISC, which develops, manages and brands hotels, residential and mixed use projects.

19.     In October 2011, ISC's predecessor and Mr. Schrager opened a hotel in Chicago replacing the Ambassador East Hotel. The hotel was renamed The Public Chicago or PUBLIC Hotel Chicago as shown below:



20.     On February 14, 2012, IAC obtained trademark registration no. 4100300 for PUBLIC for use in connection with "hotel services," which registration is incontestable.

21.     In or around 2016, The Public Chicago sold and was rebranded to its original name, the Ambassador Chicago.

22.     In June of 2017, Defendants opened a hotel in New York named simply PUBLIC. Defendants' use of PUBLIC in connection with the New York hotel evolved in style from its Chicago days closer to The Public's style as shown below:

          

       The Public Mark                 ISC Mark

23.     Much like The Public, Defendants have created a family of marks, including: PUBLIC, PUBLIC ARTS, PUBLIC LIFE, PUBLIC KITCHEN, and the design marks below (the "ISC Marks"):

**PUBLIC** LIFE **PUBLIC KITCHEN PUBLIC/ARTS**

24. Additionally and in the past year, Defendants expanded their use of the ISC Marks to include the Infringing Uses, including services at the core of The Public's Field of Use, namely live musical performances.

25. Notably, Defendants have staged live musical performances aimed to compete squarely in the theater marketplace. One such show, as shown below, featured artist Patti Smith, who has also famously appeared and performed at The Public's musical performance space, JOE'S PUB at THE PUBLIC.



26.     Most recently, Defendants market and sell an extended run of *Carmen: To Havana and Back*, a theatrical adaptation of the classic and iconic Broadway musical, *Carmen Jones*, under its ISC Marks. As shown below, Defendants describe the show as an "original theatrical cabaret and immersive nightlife experience." They further tout the success of the show as "back by popular demand."



27.     Defendants have also expanded their ISC Marks to include restaurant and bar services, including the PUBLIC ARTS and PUBLIC KITCHEN.

28.     By letters dated September 29, 2017, and October 12, 2017, The Public notified Defendants that the expanding uses, evolving appearance and expansion of the ISC Marks

infringed, diluted and otherwise unfairly competed with and The Public's long established and distinctive PUBLIC Marks. Defendants nonetheless have continued using the ISC Marks in connection with the Infringing Uses, most flagrantly in connection with their current extended run of *Carmen: To Havana & Back*, as discussed above.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (Federal Trademark Infringement, 15 U.S.C. § 1114)

29.     The Public realleges and incorporates by reference the preceding allegations set forth in Paragraphs 1 through 28 as if fully set forth herein.

30.     Given that Defendants' ISC Marks so closely resemble the PUBLIC Marks for the same and related services, the public is likely to associate Defendants' services with The Public or with The Public's services, or to believe that Defendants' Infringing Uses are sponsored, endorsed or licensed by The Public, or that there is some relationship between Defendants and The Public.

31.     Use of Defendants' ISC Marks in connection with the Infringing Uses is likely to cause confusion, cause mistake or deceive the public, and cause the public to believe that the services offered in connection with Defendants' ISC Marks emanate from or are otherwise sponsored or endorsed by The Public, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32.     Defendants' use of the confusingly similar ISC Marks has been deliberate and willful, and with actual knowledge of The Public's rights in the PUBLIC Marks.

33.     The Public has no adequate remedy at law and, if Defendants' wrongful use of the ISC Marks is not enjoined, The Public will suffer irreparable harm and injury to its goodwill and reputation.

## SECOND CAUSE OF ACTION
### (Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a)(1)(A))

34.     The Public realleges and incorporates by reference the preceding allegations set forth in Paragraphs 1 through 33 as if fully set forth herein.

35.     Defendants' use of the ISC Marks in connection with the Infringing Uses violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), because Defendants' use is likely to cause confusion and mistake as to the origin, sponsorship, or approval of services offered and promoted by Defendants, including as to whether Defendants' services originate from or are sponsored or approved by The Public.

36.     Defendants' use of the confusingly similar trademark ISC Marks has been deliberate and willful and with actual knowledge of The Public's rights in the PUBLIC Marks.

37.     The Public has no adequate remedy at law, and if Defendants' wrongful use of the ISC Marks is not enjoined, The Public will suffer irreparable harm and injury to its goodwill and reputation.

## THIRD CAUSE OF ACTION
### (Trademark Dilution Pursuant to N.Y General Business Law §360-L)

38.     The Public realleges and incorporates by reference the preceding allegations set forth in Paragraphs 1 through 37 as if fully set forth herein.

39.     By virtue of the long-standing success and renown of The Public and its services, the PUBLIC Marks are distinctive. The PUBLIC Marks achieved that distinctiveness prior to Defendants' use of the ISC Marks in connection with the Infringing Uses.

40.     Defendants' use of the ISC Marks in connection with the Infringing Uses is likely to dilute the distinctiveness of the PUBLIC Marks individually and collectively, causing them to lose the ability to serve as a unique product identifier for The Public's Field of Use.

41.     Defendants' conduct constitutes dilution under New York General Business Law §360-L.

42.     The Public has no adequate remedy at law, and if Defendants' dilutive acts described above are not enjoined, The Public will suffer irreparable harm and injury.

## FOURTH CAUSE OF ACTION
### (Unfair Competition Under New York Common Law)

43.     The Public realleges and incorporates by reference the preceding allegations set forth in Paragraphs 1 through 42 as if fully set forth herein.

44.     Defendants have misappropriated in bad faith a commercial advantage which belongs exclusively to The Public, namely, the PUBLIC Marks.

45.     Defendants' conduct has confused or is likely to confuse consumers.

46.     Defendants' aforementioned acts as described above constitute unfair competition under New York common law.

47.     Because of Defendants' conduct, The Public has suffered damages and has been irreparably harmed in its business and unless restrained will continue to cause great and irreparable injury to The Public and to The Public's business and goodwill, leaving The Public with no adequate remedy at law.
Unless Defendants are enjoined from continuing the aforementioned wrongful acts, The Public will continue to suffer irreparable harm.

## FIFTH CAUSE OF ACTION
### (Deceptive Practices Under General Business Law § 349)

48.     The Public realleges and incorporates by reference the preceding allegations set forth in Paragraphs 1 through 47 as if fully set forth herein.

49.     Defendants' foregoing acts constitute deceptive acts and business practices of

a recurring nature and have caused and will continue to cause injury to the public at large as well as The Public, in violation of New York General Business Law § 349.

50.     Defendants have engaged and continue to engage in this activity knowingly, deliberately, and willfully so as to justify the assessment of increased and punitive damages against them, in an amount to be determined at the time of trial.

51.     Defendants' violation of New York General Business Law § 349 has caused The Public to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

52.     The aforesaid acts of Defendants have caused and, unless said acts are restrained by this Court, will continue to cause The Public to suffer irreparable injury.

53.     The Public has no adequate remedy at law.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

54.     The Public realleges and incorporates by reference the preceding allegations set forth in Paragraphs 1 through 54, as if fully set forth herein.

55.     Based upon Defendants' willful and intentional use of the PUBLIC Marks or trademarks nearly identical to and confusingly similar with the PUBLIC Marks in connection with the Infringing Uses, Defendants have been unjustly enriched in an amount to be determined at trial.

56.     Defendants' retention of monies gained through its infringing activities and deceptive business practices and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## PRAYER FOR RELIEF

WHEREFORE, The Public seeks judgment in its favor and against Defendants as follows:

A.     That the Defendants, their agents, servants, employees, licensees, sponsors, associates, and attorneys, and all persons acting by, though, or in active concert with any of them, be permanently enjoined:

      i.   From advertising, promoting, marketing, offering for sale and/or selling the Infringing Uses under the ISC Marks;

     ii.   From using trademarks confusingly similar to the PUBLIC Marks in connection with the Infringing Uses;

   iii.   From committing any other act which represents or which has the effect of representing that the goods or services of Defendants are licensed, authorized by, or in any way associated with The Public;

    iv.   From otherwise infringing the PUBLIC Marks;

     v.   From otherwise deceptively or unfairly competing with The Public in any manner; and

B.     That The Public be awarded the damages it sustained as a result of Defendants' infringement and unfair competition in an amount to be proven at trial; and

C.     That Defendants account to The Public for all gains, profits and advantages derived from Defendants' wrongful acts; and

D.     That The Public recover from Defendants all of Defendants' profits and all damages, including lost profits, sustained by The Public as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate, pursuant to the U.S. Lanham Act and New York State law; and

E.     That The Public be awarded treble damages pursuant to 15 U.S.C. section 1117(a); and

F.     That The Public be awarded punitive damages pursuant to New York State common law on account of Defendants' gross, wanton, willful, and malicious conduct; and

G.     That The Public be awarded all the costs, disbursements and reasonable attorneys' fees to the extent permitted by law; and

H.     Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, The Public

hereby demands a jury trial on all issues so triable.

Dated:  February 21, 2019                         Respectfully submitted,

                                                  By:  */s/ G. Roxanne Elings*

                                                  DAVIS WRIGHT TREMAINE LLP
                                                  G. Roxanne Elings
                                                  (RoxanneElings@dwt.com)
                                                  L. Danielle Toaltoan
                                                  (DanielleToaltoan@dwt.com)
                                                  1251 Avenue of the Americas
                                                  New York, New York 10020
                                                  Telephone: (212) 489-8230
                                                  Facsimile: (212) 489-8340
                                                  *Attorneys for Plaintiff,*
                                                  *New York Shakespeare Festival*

14